# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

ALLEGRA SLEEP,

    Plaintiff,

v.                                                                                                                      Civ. No. 19-137 GJF/JHR

SCHWAN'S COMPANY, et al.,

    Defendants,

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's "Motion to Remand and Memorandum of Law" ("Motion") [ECF 14], filed March 19, 2019. The Motion is fully briefed. *See* ECFs 14, 19, 20, 21.[1] For the reasons discussed below, the Court finds that Defendants timely filed a "Notice of Removal" ("Notice") [ECF 1].[2] Furthermore, the Court holds that Defendants have made a plausible allegation, established by a preponderance of the evidence, that the amount in controversy now exceeds $75,000. Consequently, the Court will **DENY** Plaintiff's Motion.

## I. BACKGROUND

Plaintiff initiated the instant action in the Eighth Judicial District Court for the State of New Mexico. Grounded in products liability, negligence, and bad faith insurance practices, this lawsuit stems from a nail allegedly found in a frozen pizza that Plaintiff purchased from a store owned by Defendant Dollar General Corporation. *See* ECF 1, Ex. B, Plaintiff's First Amended Complaint,

---

[1] Ironically, Plaintiff argues in her Motion that Defendants' Notice of Removal was untimely, but then filed her Reply two days late. And while Plaintiff's Reply was untimely, Defendant's Notice of Removal was in fact timely, as explained in Section IV(a) below. Additionally, Plaintiff neither acknowledged her Reply's untimeliness nor sought the Court permission to excuse it. It is enough for the Court to observe that this sequence of events is disfavored and should not be repeated.

[2] Defendant Schwan's Shared Services, LLC filed the Notice. ECF 1. Defendants Schwan's Company, Dollar General Corporation, and Dolgencorp, LLC all consented to the removal. *See* ECFs 1, 3, 7. Therefore, for clarity, this Court will refer to the Notice as if it had been filed by all defendants collectively.

21-35 (hereinafter "FAC"). Plaintiff alleges that Defendant Schwan's Company manufactured the pizza. *Id*. Unaware of the nail, Plaintiff bit into the pizza and suffered damage to a veneered tooth. *Id*. Immediately after the incident, Plaintiff retained an attorney who then contacted Defendants to make a claim for damages. *Id*. After discussion between the parties, Plaintiff submitted the pizza and nail to a forensic laboratory specifically used by Defendants Schwan's Company and Schwan's Shared Services LLC for food related claims. *Id*. Soon after, Plaintiff filed the instant suit.

After all Defendants answered, Plaintiff sent a demand package, which included information about her intent to add additional claims as well as a discussion regarding the value of the claim. *See* Resp. Ex. A. Defendants received the demand package on January 17, 2019. *See* Mot. 4; *see also* Resp. 4. Believing that the demand package now established federal diversity jurisdiction, Defendants removed the case to this Court on February 19, 2019. *See* ECF 1. Plaintiff has challenged the removal in the instant Motion.

## II. SUMMARY OF ARGUMENTS

Plaintiff's request for remand is two-pronged. First, Plaintiff argues that Defendants' Notice was untimely under 28 U.S.C. § 1446, an infirmity that requires remand. Mot. 3. Second, Plaintiff asserts that Defendants inadequately established the amount in controversy threshold required for diversity jurisdiction under 28 U.S.C. § 1332 because the Notice failed to prove to a "legal certainty" that the sum at issue exceeds $75,000. *Id*.

Defendants disagree. According to them, the 30-day limitation on removal is calculated not by mechanically adding 30 days to the date a case becomes removable, but rather by also applying Federal Rule of Civil Procedure 6, which takes into account that due dates sometimes fall on weekends or legal holidays. Resp. 3-5. Defendants also dispute Plaintiff's representation that

2

a removing defendant must prove to a "legal certainty" that the amount in controversy in a case removed on diversity jurisdiction exceeds $75,000. Instead, Defendants contend that the correct burden merely requires that the Notice include a "plausible allegation" that the amount in controversy exceeds $75,000, a burden Defendants believe they have met. *Id*. at 5-7.

### III. LEGAL STANDARDS

A defendant may invoke 28 U.S.C. § 1441(a) to remove a civil action to the federal district court "embracing the place where such action is pending" if the requirements for original federal jurisdiction are met. 28 U.S.C. § 1441(a); *see Huffman v. Saul Holdings Ltd.*, 194 F.3d 1072, 1076 (10th Cir. 1999) ("When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court." (quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996))). Removal based on diversity jurisdiction must comply with 28 U.S.C. § 1332. Under § 1332(a), a federal district court "shall have original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,000" and where diversity between the parties is complete. 28 U.S.C. § 1332(a); *see Paros Properties LLC v. Colorado Cas. Ins. Co.*, 835 F.3d 1264, 1269 (10th Cir. 2016) (removal requires amount in controversy to exceed $75,000 (citing § 1332(a) (requirements for diversity jurisdiction) and § 1441(a) (requirements for removal)); *Sylvia v. Wisler*, 875 F.3d 1307, 1311 n.1 (10th Cir. 2017) ("[T]here must be 'complete diversity between all plaintiffs and all defendants.'" (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005))).

In addition, a defendant must also comply with 28 U.S.C. § 1446 to remove a civil action. Under this statute, a notice of removal ordinarily must be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim

3

for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). But "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." § 1446(b)(3). A defendant's "failure to comply with these express statutory requirements for removal can fairly be said to render the removal 'defective' and justify a remand." *Huffman v. Saul Holdings Ltd. Partn.*, 194 F.3d 1072, 1077 (10th Cir. 1999) (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1253 (11th Cir. 1999)).

A plaintiff may move to remand a case back to state court on the basis of a "defect other than subject matter jurisdiction" by filing a motion within "30 days after the filing of removal under section 1446(a)." 28 U.S.C. § 1447(c). If, however, "at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Id*.

## IV. ANALYSIS

The Court must address two issues in its determination of whether Defendants properly removed this case: whether the Notice was timely filed and, if so, whether this Court possesses subject matter jurisdiction over the matter. As explained below, this Court concludes that the Notice was timely filed and that it has subject matter jurisdiction over this case.

### A. Defendants Timely Filed Their Notice[3]

Plaintiff argues that, even if her demand letter constituted an "other paper from which it may first be ascertained that the case is one which is or has become removable," Defendants

---

[3] In her Reply, Plaintiff states that she "is prepared to concede that the Notice of Removal filed by Schwan's was timely filed." Reply 1. The Court cannot discern from the rest of her Reply brief, however, whether she actually conceded the issue or was only "prepared" to do so. Therefore, the Court will explain why in fact Defendant's Notice of Removal was timely.

4

nevertheless filed the Notice outside of the 30-day statutory requirement prescribed by § 1446(a). *See* Mot. 4. This Court disagrees, finding that Defendants timely filed the Notice.

As Defendants correctly argue, Rule 6 of the Federal Rules of Civil Procedure governs the 30-day calculation. This rule applies to the "computing [of] any time period specified in . . . any statute that does not specify a method of computing time." Fed. R. Civ. P. 6(a)(1)(C). It calls for a court to "count every day, including intermediate Saturdays, Sundays, and legal holidays," but when the last day falls on a "Saturday, Sunday or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Civ. R. 6(a)(1)(B)-(C); *see Martinez v. Draim*, No. 18-cv-1098-JAP-KBM, 2018 WL 6788519, at *2 (D.N.M. Dec. 26, 2018) (adding three additional days to removal deadline under Rule 6); *see also Nieto v. U. of N.M.*, 727 F. Supp. 2d 1176, 1192 n.15 (D.N.M. 2010) (Rule 6 applies when computing removal deadline).

Defendants' Notice clearly complied with the 30-day limitation. To begin, Defendants received the demand package that triggered the Notice on January 17, 2019. *See* Mot. 4. And they filed the Notice on February 19, 2019, thirty-three calendar days (excluding January 17 as required by Rule 6) after the ascertainable removal date. *See* Fed. R. Civ. P 6(a)(1)(A) ("exclude the day of the event that triggers the period"). Nevertheless, under Rule 6, Defendants complied with the statutory deadline. That is because the thirtieth day fell on Saturday, February 16, 2019. Rule 6 requires that this Court extend the deadline to the next day that is not a "Saturday, Sunday, or legal holiday." In most instances, that would have been Monday, February 18, 2019. But not here, for that date happened to be Presidents Day, a legal holiday recognized both by this Court and the federal government. *See* 5 U.S.C. § 6103(a) (establishing "Washington's Birthday, the third Monday in February," as one of the federal government's "legal public holidays"). Therefore, the

deadline was extended to Tuesday, February 19, 2019, the date on which Defendants filed the Notice. Consequently, Defendants timely filed the Notice in compliance with § 1446(a).

### B. The Amount in Controversy Exceeds $75,000

Plaintiff next claims that Defendants have failed to establish to a legal certainty that the amount in controversy in this matter exceeds $75,000. Mot. 4-5. Plaintiff argues that Defendants rely on an inadmissible settlement demand to establish that the amount exceeds the statutory threshold. *Id*. at 6. Defendants respond by contending that they do not have to prove to a "legal certainty" that the amount in controversy exceeds $75,000, rather that the Notice need only include a "plausible allegation" that the statutory threshold has been met, and if challenged through a motion to remand, by a preponderance of the evidence. Resp. 5-7. As explained below, the Court finds that Defendants have met their burden in establishing that the amount in controversy exceeds $75,000.

"When removal is based on diversity of citizenship, an amount-in-controversy requirement must be met." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014). In the Tenth Circuit, a plaintiff's chosen amount of damages in the complaint does not foreclose a defendant from establishing jurisdiction, rather the burden can be met if a defendant proves "jurisdictional facts that make it *possible* that $75,000 [is] in play." *McPhail v. Deere & Co.*, 529 F.3d 947, 953-55 (10th Cir. 2008) (emphasis in original). This does not require proof of the amount in controversy in the notice itself, rather a plausible allegation will suffice. *See Dart Cherokee Basin*, 135 S. Ct. 547, *passim*.

If a plaintiff challenges the allegation in the notice, however, "§ 1446(c)(2)(B) instructs: '[R]emoval . . . is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy

6

exceeds' the jurisdictional threshold." *Id*. at 553-54 (brackets in original). Furthermore, jurisdictional evidence may consist of "contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by introducing evidence, in the form of affidavits from the defendant's . . . experts, about how much it would cost to satisfy the plaintiff's demands." *McPhail*, 529 F.3d at 954 (brackets in original). And a "plaintiff's proposed settlement amount 'is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim.'" *Id*. at 956 (quoting *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002)).

As an initial matter, the Court is obliged to correct a misunderstanding set forth in Plaintiff's Motion and Reply. Plaintiff maintains throughout her Motion that *Eleventh Circuit* authority requires Defendants to prove to a "legal certainty" that the amount in controversy exceeds § 1332's statutory floor. Mot. 5-7. For that proposition, Plaintiff directs the Court to *Burns v. Windsor Ins. Co.*, 31 F.3d 1092 (11th Cir. 1994), which sure enough applied that standard. *Id*. 7. The Court observes that *Burns* was decided twenty-five years ago and, in the interim, Westlaw flagged the case as being superseded by statute and Lexis incorporated in the case heading a large red stop sign logo that warns that the case has been superseded by the same statute, namely 28 U.S.C. § 1446.[4] Counsel should understand that the Court relies on counsel's representations of the law and its currency, and therefore encourages Plaintiff's counsel to redouble his efforts to bring to the Court's attention controlling statutory and Tenth Circuit authority wherever possible.

---

[4] Westlaw even hyperlinks a case, *Burnette v. Regions Bank*, No. 5:15-cv-567-Oc-32PRL, 2016 WL 1644182 (M.D. Fla. Apr. 26, 2016), which explicitly states "the most recent amendment of § 1446 displaces previous Eleventh Circuit case law, which held that, when a state court complaint explicitly seeks an amount of damages less than the jurisdictional amount, removal to federal court is allowed only if the removing defendant can establish to a 'legal certainty' that the amount in controversy exceeds the jurisdictional threshold." *Id.* at *3 n.2 (citations and internal quotation marks omitted).

7

Had he done so here, Plaintiff's counsel likely would have withdrawn the instant Motion or perhaps never filed it in the first place.

Turning now to the instant action, the underlying facts are: (1) Defendants' Notice cited to the allegations in the complaint and included an affidavit by Stephanie Demers, counsel of record for Defendants Schwan's Company and Schwan's Shared Services, LLC which stated "[b]ased upon the information available to counsel, and the [settlement demand] . . . I believe the amount in controversy in this case exceeds the sum or value of $75,000.00;" (2) Plaintiff filed the instant Motion contesting the Notice's representation that the amount in controversy was satisfied; and (3) Defendants attached Plaintiff's settlement demand package as an exhibit to their response as proof that the amount was satisfied. *See* Notice Ex. A; *see also* Resp. Ex. A.

Because Plaintiff contests the Notice through the instant Motion, the Court must determine whether the jurisdictional facts in the record establish by a preponderance of the evidence that the amount in controversy threshold is satisfied. In the First Amended Complaint ("FAC"). Plaintiff invoked theories of strict product liability, ordinary negligence, negligence per se, tortious breach of the implied covenant of good faith and fair dealing, bad faith insurance practices, and violations of the New Mexico Insurance Trade Practices and Frauds Act. FAC, *passim*. Plaintiff requests compensatory, pain and suffering, emotional distress, and punitive damages. *Id*. Nonetheless, Plaintiff insisted that "[t]he amount in controversy in this matter does not exceed Seventy Five [sic] Thousand Dollars ($75,000.00)." *Id*. at 23.

It is clear to this Court that Plaintiff drafted her FAC as she did to prevent its removal to federal court. That effort was effectively foiled, however, when Plaintiff later sent a settlement demand package to Defendants on January 16, 2019. In relevant part, her demand stated:

(1) the "previously made . . . $45,040.00" offer was "withdrawn;"

(2) Plaintiff was revising her demand because of "psychological problems . . . as a result of [the] incident [that] clearly were not anticipated" and have been increasing in severity as a result of multiple trips to the dentist with "at least one or two more visits;"

(3) Plaintiff is suffering from "anxiety" and that the "Eggshell Skull Rule" applies;

(4) Plaintiff has needed to take more "Lorazepam" than ever before and has been referred to a "mental health professional;"

(5) Plaintiff will be adding claims for the "loss of enjoyment in life, conscious pain and suffering, loss of household services and mental pain and anguish;" and

(6) damages "may well exceed the $75,000.00 minimum for federal court jurisdiction . . . [Defendants] may wish to make an offer for that amount[.]"

Resp. Ex. A, *passim*.

Defendants argue that this letter contains plainly sufficient jurisdictional facts to establish the amount in controversy by a preponderance of the evidence. Resp. 5-7. Plaintiff contends that this Court cannot consider the demand package because the Federal Rules of Evidence bar its admission into evidence for any purpose. Mot. 6. As illustrated below, however, Tenth Circuit precedent demonstrates that the Court may indeed review such a demand package. And as further explained below, by combining this demand package with the allegations and legal theories in the FAC, Defendants have established sufficient jurisdictional facts by a preponderance of the evidence.

This Court begins by analyzing whether Plaintiff foreclosed Defendants from removal merely by pleading that "[t]he amount in controversy in this matter does not exceed Seventy Five [sic] Thousand Dollars ($75,000.00)." FAC at 23. In *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1248 (10th Cir. 2012), the Tenth Circuit readdressed the issue in the context of the Class Action Fairness Act's $5 million floor. There, the plaintiff sought "a total award for compensatory and punitive damages [that] does not exceed $4,999,999.99." *Id*. at 1245

9

(bracket in original). The plaintiff moved to remand "asserting that the court lacked jurisdiction because, as 'master of his complaint,' he 'decided to limit total damages to an amount no more than $4,999,999.99.'" *Id*. (citations omitted). The district court remanded because "regardless of the standard of proof, [defendant] failed to demonstrate that the amount in controversy exceeded $5,000,000." *Id*.

In reversing, the Tenth Circuit noted several flaws in the district court's reasoning. The court explained that the district court—without having the benefit of the Tenth Circuit's decision on the matter—failed to apply the preponderance of the evidence standard. *Id*. at 1248. Moreover, the court held that the district court improperly "relied on the fact that [plaintiff] requested less than the jurisdictional minimum in his complaint." *Id*. This was erroneous because the district court "did not consider the defendant's notice of removal or the evidence submitted supporting jurisdiction," and "it treated the plaintiff's pleadings as dispositive." *Id*. To the contrary, "[a] court may not forgo an analysis of a defendant's claims regarding the amount in controversy merely because a plaintiff pleads that he is seeking less than the jurisdictional minimum." *Id*. Thus, in the instant case, Plaintiff did not foreclose Defendants from removal merely by pleading that the amount in controversy did not exceed $75,000. Instead, as mandated by the Tenth Circuit, this Court must analyze Defendant's evidence to determine whether the amount in controversy has been established by a preponderance of the evidence.

Regarding the next question—whether the Court can properly consider the settlement demand—the Tenth Circuit has responded in the affirmative. In *McPhail*, as required by Oklahoma pleading rules, the plaintiff refrained from alleging a specific dollar amount in the complaint and, among other things, argued that this omission precluded defendant from establishing subject matter jurisdiction. *McPhail*, 529 F.3d at 955. The notice of removal cited to

the various allegations made in the complaint and incorporated correspondence between counsel that discussed the value of the claim. *Id.* at 956. In addressing the correspondence, the Tenth Circuit "[a]cknowledged that the use of a settlement offer would not be permissible *at trial* as evidence to establish liability for or invalidity of the claim or its amount," but it nonetheless held that "documents that demonstrate [a] plaintiff's own estimation of its claim are a proper means of supporting the allegations in the notice of removal, even though they cannot be used to support the ultimate amount of liability." *Id.* (internal citations and quotations omitted) (emphasis added). Thus, in the case at hand, the Court may consider Plaintiff's demand package as proper jurisdictional evidence, as commanded by *McPhail*.

After determining that a settlement offer was proper jurisdictional evidence, the *McPhail* court turned to the facts before it. In the complaint, the plaintiff sought relief "in an amount in excess of Ten Thousand Dollars . . . and sought actual damages, punitive damages as determined by the trier of fact, plus pre and post judgment interest, costs, attorney fees and such other and further relief which the Court deems appropriate . . . without citing any specific sum." *Id.* (citations omitted). Additionally, in the correspondence between the parties, plaintiff's counsel stated that "it may very well be true that the amount in controversy would exceed $75,000." *Id.* The Tenth Circuit held that "[g]iven the allegations and the nature of the damages sought [punitive], the complaint on its face may be sufficient by itself to support removal. We need not decide the question based on the complaint alone, however, because the correspondence between counsel that was incorporated in the notice of removal demonstrates that [plaintiff's] attorneys also believed the amount in controversy "very well may be" in excess of $75,000." *Id.* at 957.

Both *Frederick* and *McPhail* demonstrate that Defendants have proffered jurisdictional facts sufficient to meet their burden. To be sure, the FAC expressly states that the "amount

11

controversy in this matter does not exceed Seventy Five [sic] Thousand Dollars ($75,000.00)[,]" but this is a *nondispositive* jurisdictional assertion that carries relatively little weight in light of the demand package. *See Frederick,* 683 F.3d at 1248. Furthermore, the FAC includes multiple claims that carry the possibility of punitive damages, which this Court may properly consider.[5] *Id.* at 1247 ("As a general matter, '[p]unitive damages may be considered in determining the requisite jurisdictional amount.'" (quoting *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003))). And Plaintiff notified Defendants—through the admissible demand package—of her intention to add claims for the "loss of enjoyment in life, conscious pain and suffering, loss of household services and mental pain and anguish." Resp. Ex. A at 5.

But there is still more. In her demand package, Plaintiff informed Defendants that the damages "may well exceed the $75,000.00 minimum for federal court jurisdiction" and that they "may wish to make an offer for that amount[.]" *Id.* This was a statement that, while not proof of the amount Plaintiff would recover, nevertheless demonstrated that Plaintiff's accruing damages had now caused her to conclude that her "own estimation" of her claims exceeded the jurisdictional threshold. *McPhail*, 529 F.3d at 956. This estimation was further solidified when Plaintiff represented that she (1) was revising her demand because of "psychological problems," (2) now suffers from "anxiety" to which the "Eggshell Skull Rule" applies, (3) has needed to take more "Lorazepam" than ever before, and (4) has been referred to a "mental health professional." Resp. Ex. A at 1-4. In sum, in relying on the allegations, legal theories, and available damages in Plaintiff's FAC, as well as the language of the demand package, Defendant has established—by

---

[5] Plaintiff argues Defendant Schwan's Company is a "self-insurer" while Defendant Schwan's Shared services is an "adjuster" under the New Mexico Insurance Practices Act § 59A-16-1 et seq. NMRA. FAC at 33-5. UJI 13-1718 NMRA allows for punitive damages if an insurer is found to have acted in bad faith, willfully, or with recklessness. Moreover, UJI 13-1827 NMRA allows for punitive damages when a party's conduct was malicious, willful, reckless, wanton, fraudulent or in bad faith. All of these issues are in play according to the FAC.

well more than a preponderance of the evidence—that it is "*possibl*e that $ 75,000 [is] in play."

*McPhail*, 529 F.3d at 955 (citation omitted) (emphasis original).

## VII. CONCLUSION

For the forgoing reasons, the Court finds that Defendants timely filed their Notice of Removal and have established, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion is **DENIED**.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*